IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony L. Mann, ) | C/A No. 0:14-1831-RMG-PJG |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Capt Rhonda Abston; Capt DeGeorgis; Sgt Arrowood; and Ofc McBride, ) | |
| Defendants. ) | |

The plaintiff, Anthony L. Mann, a self-represented state prisoner, filed this action against the defendants pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 65.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Mann of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 66.) Mann filed a response in opposition to the motion (ECF No. 85), and the defendants replied (ECF No. 86). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

BACKGROUND

Mann alleges that on May 14, 2011, while housed at Perry Correctional Institution ("PCI"), Defendants Officer McBride and Sgt. Arrowood confiscated his prison jumpsuit for ninety days because it was hanging on the door hinge of Mann's cell, leaving Mann with only his socks and boxer shorts to clothe himself. Mann further alleges that, on June 20, 2011, Officer McBride

confiscated Mann's spare pair of socks and boxer shorts for ninety days when he saw them hanging on the "bar door" of Mann's cell. Mann complains that, on laundry days, the loss of these articles of clothing left him with only a sheet or towel with which to cover himself for twenty-four hours at a time. He also alleges that the confiscation of his clothing prevented him from participating in outdoor recreation or getting any fresh air. On June 22, 2011, Mann was moved to a different cell pursuant to the orders of Defendants Captain DeGeorgis and Captain Abston. Mann alleges that the light in this cell remained on for twenty-four hours a day, resulting in Mann's being unable to sleep and suffering from migraine headaches. These conditions, Mann alleges, caused him to become depressed and ultimately resulted in his attempting suicide in January 2012 after Defendant Arrowood allegedly provided Mann with a razor blood and verbally encouraged Mann to kill himself. Mann seeks injunctive and monetary relief. (See generally Compl., ECF No. 1.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).



In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Exhaustion of Administrative Remedies**

The defendants argue that Mann failed to exhaust his administrative remedies with regard to his claims.  A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such



administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC"), a state executive-branch tribunal, is generally part of

PJG

the available administrative remedies an inmate must exhaust.[1] S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law Court, which is an agency and court of record within the *executive* branch of the government of this State.") (emphasis added); see Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)).

The defendants, through affidavit testimony provided by David Martinez, the Grievance Inmate Coordinator for Lee Correctional Institution, acknowledge that Mann filed twenty-six grievances during the relevant time period between March 2011 through January 20, 2012. (Martinez Aff. ¶ 3, ECF No. 65-7 at 1.) However, the defendants argue that Mann did not properly exhaust his administrative remedies with regard to the issues raised in the instant Complaint.

**1.      Confiscation of Clothing**

   **a.      Grievance No. PCI 1479-11**

The parties appear to agree that Mann filed his first Step 1 grievance with regard to his clothing being confiscated on June 13, 2011. (See Grievance No. PCI 1479-11, ECF No. 65-8 at 1-2; Martinez Aff. ¶ 6, ECF No. 65-7 at 2.) In this grievance, Mann complains that his jumpsuit was confiscated for ninety days because it was hung on the bar door, and that no policy supports this

---

[1] South Carolina case law has established certain exceptions not applicable here. See Howard v. S.C. Dep't of Corr., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the ALC lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the ALC is without jurisdiction to hear facial challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); Howard, 399 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies).



action. Mann received a response to this grievance and appealed the decision by filing a Step 2 grievance on May 2, 2012.[2] (ECF No. 65-8 at 3.) The defendants argue that Mann withdrew this grievance as "resolved" on May 20, 2013. (Defs.' Mem. Supp. Summ. J., ECF No. 65-1 at 6; Martinez Aff. ¶ 6, ECF No. 65-7 at 2.)

Mann disputes that he withdrew this grievance. Instead, he suggests that because he has been moved to Lee Correctional Institution and was no longer housed at Perry Correctional Institution (where the incident occurred), "the [Inmate Grievance Coordinator] took it upon themselves to consider the Grievance resolved." (Pl.'s Resp. Opp'n Summ. J., ECF No. 85 at 5.) He further argues that he has never withdrawn any grievance.[3] (Id.)

This dispute is not a material one, however, as the record indisputably shows, whether or not Mann intended to withdraw this grievance, that he took no further action to challenge the inmate grievance coordinator's decision with regard to grievance PCI 1479-11.[4] Accordingly, Mann did not properly exhaust his administrative remedies with regard to the claims raised in this grievance. See Woodford, 548 U.S. at 90; Jones, 549 U.S. at 218.

---

[2] In his affidavit, the inmate grievance coordinator notes that this grievance contains what he believes to be a typographical error in the warden's response incorrectly references an "Inmate Porter" and grievance number "PCI-1787-11." (Martinez Aff. ¶ 6, ECF No. 65-7.) However, Martinez avers that the body of the warden's response clearly is a direct response to grievance PCI-1479-11 filed by Inmate Mann. (Id.)

[3] In support of this argument, Mann cites to an "Exhibit C"; however, no such exhibit is attached to his filed response in opposition.

[4] Review of Mann's Step 2 grievance reveals that Mann's signature is affixed to the Grievant Signature line. Accordingly, the record is clear that Mann received the inmate grievance coordinator's response indicating his grievance had been "resolved."



### b.     Grievance No. PCI 1535-11

Mann filed a Step 1 grievance on June 20, 2011 challenging a Special Management Unit ("SMU") policy in which items of clothing are confiscated for ninety days if hung on the bar doors, and asking that the policy be stricken. (See Grievance PCI 1535-11, ECF No. 65-8 at 4; Martinez Aff. ¶ 4, ECF No. 65-7 at 1.) This grievance was returned to Mann as unprocessed, noting that Mann had not indicated the specific policy that he wanted changed—which David Martinez, the Grievance Inmate Coordinator for Lee Correctional Institution, avers is a requirement under the Inmate Grievance Policy—and advising Mann that he had five days to resubmit the grievance. (Id.) The defendants argue that Mann failed to resubmit this grievance. (Defs.' Mem. Supp. Summ. J., ECF No. 65-1 at 6-7; Martinez Aff. ¶ 4, ECF No. 65-7 at 1.)

The defendants provide affidavit testimony in which they aver that no items or clothing are permitted to be placed or hung on the bar door pursuant to PCI-SMU Inmate Standards. (Abston Aff. ¶¶ 3, 5; ECF No. 65-3 at 1-2; Arrowood Aff. ¶ 3, ECF No. 65-5 at 1-2; McBride Aff. ¶ 3-4, ECF No. 65-6 at 1-2.) They further aver that, as a penalty for this misuse of property, Mann's clothing items were confiscated for ninety days. (Id.) Mann acknowledges his awareness of this rule in his response in opposition and even includes a copy of the Perry Correctional Institution Special Management Unit Inmate Standards as Exhibit E to his response, which states that "[n]o items of any type will be allowed on or attached to the cell bar door at any time" and "[a]ny personal items out of place in the cell . . . will be confiscated . . . ." (ECF No. 85-1 at 8.) He appears to explain in his response that he objects not to the rule itself, but rather appears to argue that the defendants abused their discretion or exceeded their authority in confiscating his clothing for such a long time period. (Pl.'s Resp. Opp'n Summ. J., ECF No. 85 at 6.)



Mann concedes that this grievance was returned to him unprocessed. Mann argues that, although he was very clear in his grievance that he wanted the policy changed that permitted guards in SMU to confiscate clothing for ninety days, in fact no such written policy exists. (Pl.'s Resp. Opp'n Summ. J., ECF No. 85 at 6.) He further argues that the inmate grievance coordinator's refusal to process his grievance denied Mann the opportunity to exhaust his administrative remedies. Additionally, Mann states that he responded to the unprocessed grievance by writing a Request to Staff to Inmate Grievance Coordinator Miriam Snyder requesting guidance on the issue but never received a written response and was told the issue was non-grievable, citing to an Exhibit F. Mann also argues that he re-submitted an identical grievance, but never received a reply. (Id.) However, the documents that Mann references in support of these arguments—specifically Exhibit F and his re-submitted grievance—are not included with his filed response. (See also Defs.' Reply, ECF No. 86 at 3-4.) The defendants point out in their reply brief that this exhibit is missing from Mann's response, but Mann has made no attempt to rectify this omission. (Id.) Accordingly, the only evidence in the record shows that Mann's Step 1 grievance was returned unprocessed. There is nothing in the record—other than Mann's response which is not verified under penalty of perjury—to show that Mann took any further action with regard to grievance PCI 1535-11. Accordingly, Mann did not properly exhaust his administrative remedies with regard to the claims raised in this grievance. See Williams v. Reynolds, No. 4:12-cv-138-RMG, 2013 WL 4522574, at *4 (D.S.C. Aug. 27, 2013) (finding that "even if Plaintiff did file a Step 1 grievance that was returned unprocessed, there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance" and therefore Plaintiff failed to exhaust his administrative remedies).

    c.  Grievance No. PCI 1582-11

  Mann filed a third Step 1 grievance regarding the confiscation of clothing on June 27, 2011. (See Grievance No. PCI 1582-11, ECF No. ECF No. 65-8 at 6-7; Martinez Aff. ¶ 5, ECF No. 65-7 at 2.) This grievance was returned to Mann as unprocessed, noting that it contained more than one issue. Mann was advised that he had five days to resubmit the grievance. (Id.) The defendants argue that Mann failed to resubmit this grievance. (Defs.' Resp. Opp'n Summ. J., ECF No. 65-1 at 7.)

  In his response in opposition, Mann disputes the inmate grievance coordinator's interpretation of his Step 1 grievance. (Pl.'s Resp. Opp'n Summ. J., ECF No. 85 at 6-7.) He also argues that Inmate Grievance Coordinator Miriam Snyder was later removed from her position for mismanagement of prisoner grievances. Additionally, Mann states that he resubmitted an identical grievance on this issue but never received a reply, citing to an Exhibit F. However, once again, the document to which Mann cites in support of his argument—specifically the same Exhibit F to which he previously cited—is not included with his filed response. (See also Defs.' Reply, ECF No. 86 at 3-4.) As stated above, Mann has made no attempt to rectify this omission. Accordingly, the only evidence in the record shows that Mann's Step 1 grievance was returned unprocessed. As with the other grievance, there is nothing in the record—other than Mann's response which is not verified under penalty of perjury—to show that Mann took any further action with regard to grievance PCI 1582-11. Accordingly, Mann did not properly exhaust his administrative remedies with regard to the claims raised in this grievance. See Williams, 2013 WL 4522574, at *4.

### 2. Lighting Conditions

Mann filed a Step 1 grievance on June 22, 2011 in which he complained that the light in his cell is purposely left on for twenty-four hours a day. (See Grievance No. PCI 1562-11, ECF No. 65-8 at 6-7; Martinez Aff. ¶ 7, ECF No. 2-3.) Mann received a response to this grievance and appealed the decision by filing a Step 2 grievance on May 2, 2012. (ECF No. 65-8 at 8; Martinez Aff. ¶ 7, ECF No. 2-3.) The defendants argue that Mann withdrew this grievance as "resolved" on May 20, 2013. (Defs.' Mem. Supp. Summ. J., ECF No. 65-1 at 6; Martinez Aff. ¶ 6, ECF No. 65-7 at 2.)

Mann disputes that he withdrew this grievance and again suggests that the inmate grievance coordinator resolved the grievance based upon Mann no longer being housed at Perry Correctional Institution. (Pl.'s Resp. Opp'n Summ. J., ECF No. 85 at 7.) Mann again summarily argues that he has never withdrawn any grievance. (Id.)

As stated above, this dispute is immaterial because the record indisputably shows, whether or not Mann intended to withdraw this grievance, that he took no further action to challenge the inmate grievance coordinator's decision with regard to grievance PCI 1562-11.[5] Accordingly, Mann did not properly exhaust his administrative remedies with regard to the claims raised in this grievance. See Woodford, 548 U.S. at 90; Jones, 549 U.S. at 218.

### 3. Emotional Problems/Suicide Attempt

Mann appears to have filed one Step 1 grievance with regard to the allegations surrounding his January 2012 suicide attempt. (See Grievance No. PCI 0427-12, KCI 0106-12, ECF No. 65-8 at 9; Martinez Aff. ¶ 8, ECF No. 65-7 at 3.) Specifically, this grievance described an appointment

---

[5] Review of Mann's Step 2 grievance reveals that Mann's signature is affixed to the Grievant Signature line. Accordingly, the record is clear that Mann received the inmate grievance coordinator's response indicating his grievance had been "resolved."



at the Perry Correctional Institution psychiatric clinic during which Mann discussed his emotional problems with a nurse. Following that appointment, Mann complains that Officer Thurber—who is not a defendant in this matter—told all of the other inmates about the details of Mann's discussion with the nurse and that, as a result, Mann suffered an emotional breakdown and attempted suicide. In this grievance, Mann requested that Officer Thurber be terminated. (Id.)

The defendants argue that, although this grievance is related to Mann's suicide attempt, it does not appear to contend that the culmination of events as alleged in Mann's instant Complaint resulted in Mann's suicide attempt, nor does it mention any involvement of Sgt. Arrowood in Mann's suicide attempt. (Defs.' Mem. Supp. Summ J., ECF No. 65-1 at 8-9.) Instead, as summarized above, the defendants contend that in this grievance, Mann describes his interactions with Officer Thurber as contributing to his suicide attempt. The defendants provide affidavit testimony that Mann filed only one grievance with regard to his psychological and emotional state. (Martinez Aff. ¶ 8, ECF No. 65-7 at 3.)

This grievance was returned to Mann an unprocessed because it was untimely filed. (ECF No. 65-8 at 9.) In his response in opposition, Mann argues that this was error, and states that this grievance was timely received. (Pl.'s Resp. Opp'n Summ. J., ECF No. 85 at 8.) However, Mann does not address the defendants' argument regarding the content of the grievance. Additionally, Mann does not allege, and there is no evidence in the record to show, that Mann took any further action with regard to grievance PCI 1562-11. Accordingly, Mann did not properly exhaust his administrative remedies with regard to the claims raised in this grievance. Williams, 2013 WL 4522574, at *4.

PJG

### 4. Outdoor Recreation/Fresh Air

The defendants argue that Mann did not file a grievance relating to denial of outdoor recreation or fresh air and that this claim is therefore not exhausted. (Defs.' Resp. Supp. Summ. J., ECF No. 65-1 at 10.) In response, Mann argues that, because inmates cannot participate in outdoor recreation without a jumpsuit, the denial of fresh air and outdoor recreation is a consequence of his jumpsuit being confiscated. (Pl.'s Resp. Opp'n Summ. J., ECF No. 85- at 8-9.) He appears to argue that, because he grieved the issue of his jumpsuit being confiscated, that this issue was exhausted as well. Even assuming that Mann's argument is correct and that denial of outdoor recreation can be inferred because of his lack of clothing, for the reasons discussed above, Mann failed to properly exhaust his administrative remedies with regard to the issue of the confiscation of his clothing. See supra Section B.1. Accordingly, Mann did not properly exhaust his administrative remedies with regard to the claims raised in this grievance. Woodford, 548 U.S. at 90; Jones, 549 U.S. at 218; Williams, 2013 WL 4522574, at *4.

### RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion be granted (ECF No. 65) and Mann's claims be dismissed without prejudice for failure to exhaust his administrative remedies.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 9, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).